DANIEL M. CORY AND MARGOT CORY, HIS WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 65590. Filed February 18, 1958.

*Watson Washburn, Esq.*, for the petitioners.
*John A. Dunkel, Esq.*, for the respondent.

TIETJENS, *Judge:* The respondent determined a deficiency in income tax in the amount of $15,204.97 for the calendar year 1945. The sole issue is whether sections 1311 to 1314 of the Internal Revenue Code of 1954 are applicable to mitigate the effect of the statute of limitations upon assessment of the deficiency.

The evidence consists of exhibits received at the hearing and the record in Docket No. 37209, which concerned a deficiency determined against these petitioners for 1944 and decided in 23 T. C. 775 (1955), together with the affirming opinion of the Court of Appeals for the Second Circuit 230, F. 2d 941 (1956), which the parties have agreed to incorporate herein. The facts found in the prior proceeding are restated here to the extent deemed necessary for the purpose of this Opinion with additional findings from the further evidence introduced.

### FINDINGS OF FACT.

Daniel M. Cory received a gift from the author George Santayana in the form of the manuscript of Santayana's autobiography called "Persons and Places." Cory entered into an agreement in November 1942 with Charles Scribner's Sons for its publication with payment of royalties to Cory. A relative of the author, George Sturgis, disputed Cory's title to the manuscript. An agreement was reached in June 1943 between Cory, Sturgis, and Scribner's providing for payment of the royalties into escrow pending settlement of the dispute, with payment of not over $12,000 to be made to Cory from the escrow fund.

In 1944 Scribner's paid $42,363.57 into the escrow fund and $12,000 of this amount was paid to Cory in 1944. The matter of Cory's title was settled in 1945 in his favor. The balance of the escrow fund as of January 1, 1945, was $30,363.57. An escrow fee of $105.91 was paid from this fund and the balance of $30,257.66 was distributed in 1945 as follows:

| | |
|---|---|
| To collector of internal revenue for account of Cory or Santayana | $12,709.08 |
| To Scribner's (repayment of an advance to Cory) | 1,500.00 |
| To Cory | 16,048.58 |

The petitioners' income tax return for 1944 reported $42,057.66 as net gain from the sale or exchange of an asset held for more than 6 months. This computation deducted the escrow fee and $200 "basis" from the total escrow fund. The return showed that Cory

received only $12,000 of this in 1944. The return also reported $7 from the sale of 2 poems and $300 (of which $150 was taken into account) from the sale of an article. The return showed a tax due of $7,699.06. It reported payments of $16,429.34 on account including amounts withheld by Scribner's, the amount paid from the escrow fund to the collector of internal revenue, and amounts paid on declaration of estimated tax. The indicated overpayment of $8,730.28 was refunded to the petitioners during or after 1945. Attached to the return was a detailed statement in explanation of the transaction concerning the autobiography.

The petitioners filed a timely income tax return for 1945 with the collector of internal revenue for the third district of New York, reporting rents or royalties of $4,635.07, less legal expense of $902.33, and showing tax due of $563, tax withheld of $1,390.56, and refund due of $827.56.

In February 1948 the petitioners filed a claim for refund of income tax for 1944 in the amount of $7,699.06, the amount originally reported on their return as due. As one ground it was alleged that the gift to Cory may not have been complete during 1944 and the proceeds would be taxable only to Santayana. As another ground it was stated that since Cory received only $12,000 in 1944 only this amount should be taxable to the petitioners in that year.

In July 1951 the respondent determined a deficiency for 1944 in the amount of $13,770.50, holding that the amount of $42,057.66 received from Scribner's was taxable as ordinary income. The petitioners filed a petition with the Tax Court, Docket No. 37209, alleging as errors the finding that the taxpayers received $42,057.66 of taxable income from Scribner's in 1944, and the finding that the amount received was taxable as ordinary income and not as capital gain, and the failure to spread the income over 36 months pursuant to section 107(b) of the Internal Revenue Code of 1939. The petition was later amended, alleging that the gift from Santayana was not complete until 1945 and any proceeds received in 1944 were not the petitioners' income.

In Docket No. 37209 we held (23 T. C. 775) that only $12,000 in proceeds from the publication was received by the petitioners in 1944 and that such proceeds were taxable as ordinary income and not capital gain. Decision was entered on June 17, 1955. The petitioners appealed the holding that the proceeds were taxable as ordinary income. The Court of Appeals affirmed on March 9, 1956, and certiorari was denied on October 8, 1956.

OPINION.

The petitioners reported in their 1944 return that they had received some $42,000 in royalties which they treated as long-term capital

gains. Actually, they received $12,000 of this in 1944 and the balance in 1945, but none of this was reported in their 1945 return. In 1948 they claimed refund of 1944 tax paid on the ground, among others, that only $12,000 was received in 1944. In 1951 the respondent determined that the entire amount of royalties reported as received in 1944 was taxable as ordinary income. This Court sustained the respondent on this point but sustained the petitioners' contention that only $12,000 was received in 1944 and taxable in that year. In the present proceeding the respondent is attempting to tax as 1945 income the royalties received in 1945 which were not reported in that year. The notice of deficiency was issued December 20, 1956, more than 10 years after the return was filed. The petitioners plead the statute of limitations. Assessment is barred by the statute of limitations unless sections 1311 to 1314[1] of the Internal Revenue Code of 1954 permit assessment as correction of an error within the terms of those sections.

---

[1] SEC. 1311. CORRECTION OF ERROR.

(a) GENERAL RULE.—If a determination (as defined in section 1313) is described in one or more of the paragraphs of section 1312 and, on the date of the determination, correction of the effect of the error referred to in the applicable paragraph of section 1312 is prevented by the operation of any law or rule of law, other than this part and other than section 7122 (relating to compromises), then the effect of the error shall be corrected by an adjustment made in the amount and in the manner specified in section 1314.

(b) CONDITIONS NECESSARY FOR ADJUSTMENT.—

(1) MAINTENANCE OF AN INCONSISTENT POSITION.—Except in cases described in paragraphs (3) (B) and (4) of section 1312, an adjustment shall be made under this part only if—

\* \* \* \* \* \* \*

(B) in case the amount of the adjustment would be assessed and collected in the same manner as a deficiency under section 1314, there is adopted in the determination a position maintained by the taxpayer with respect to whom the determination is made,

and the position maintained \* \* \* by the taxpayer in the case described in subparagraph (B) is inconsistent with the erroneous inclusion, exclusion, omission, allowance, disallowance, recognition, or nonrecognition, as the case may be.

SEC. 1312. CIRCUMSTANCES OF ADJUSTMENT.

The circumstances under which the adjustment provided in section 1311 is authorized are as follows:

\* \* \* \* \* \* \*

(3) DOUBLE EXCLUSION OF AN ITEM OF GROSS INCOME.—

(A) ITEMS INCLUDED IN INCOME.—The determination requires the exclusion from gross income of an item included in a return filed by the taxpayer or with respect to which tax was paid and which was erroneously excluded or omitted from the gross income of the taxpayer for another taxable year, or from the gross income of a related taxpayer; or

SEC. 1313. DEFINITIONS.

(a) DETERMINATION.—For purposes of this part, the term "determination" means—

(1) a decision by the Tax Court \* \* \* which has become final;

SEC. 1314. AMOUNT AND METHOD OF ADJUSTMENT.

(b) METHOD OF ADJUSTMENT.—The adjustment authorized in section 1311 (a) shall be made by assessing and collecting, or refunding or crediting, the amount thereof in the same manner as if it were a deficiency determined by the Secretary or his delegate with respect to the taxpayer as to whom the error was made or an overpayment claimed by such taxpayer, as the case may be, for the taxable year or years with respect to which an amount is ascertained under subsection (a), and as if on the date of the determination one year remained before the expiration of the periods of limitation upon assessment or filing claim for refund for such taxable year or years.

The position maintained by the petitioners in their claim for refund and in Docket No. 37209, that only $12,000 was received by them in 1944, from which it would necessarily follow that the remainder of the fund was received in 1945, was inconsistent with the position taken in filing their returns, that $42,000 was received in 1944 and none of the royalties in 1945. This inconsistent position of the petitioners was adopted in the determination of the Tax Court in 23 T. C. 775. The determination required the exclusion of an item ($30,257.66) included in a return filed by the taxpayers for 1944 which was erroneously omitted from their return for 1945. The determination became final upon the denial of the petition for certiorari on October 8, 1956.[2] The deficiency notice mailed on December 20, 1956, was within the 1-year period provided in section 1314 (b) for making the adjustment authorized in section 1311 (a). The circumstances are within the terms of the statute and the correction of the error is authorized notwithstanding the statutory period of limitations has run.

The petitioners argue that since the respondent did not appeal from the Tax Court's determination that only $12,000 was taxable in 1944, that determination became final on October 17, 1955, 4 months after the entry of the Tax Court's decision, hence the notice of deficiency mailed December 20, 1956, was not sent within the 1 year after the determination became final (sec. 1314 (b)) and is barred, citing *Helvering* v. *Pfeiffer*, 302 U. S. 247 (1937). This case stands for the proposition that an appellee cannot, without filing a cross-appeal, attack the judgment of the lower court. But when the petitioners appealed the Tax Court's decision as to the year 1944, no part of it became final until the disposition of the appeal. *Morris K. Wilson*, 42 B. T. A. 1254 (1940). See also *Rosenthal* v. *Commissioner*, 205 F. 2d 505 (C. A. 2, 1953). After the petitioners appealed, the respondent could not know whether the 1944 receipts would ultimately be taxable as capital gains or ordinary income and could not correctly determine a deficiency for 1945, until that point was decided. It would be impractical if the decision as to a single taxable year could be subdivided into several issues with varying limitation periods. We conclude that the deficiency notice here given was timely.

The petitioners also argue that their 1944 gross income reported amounted to only $21,028.83 (50 per cent of $42,057.66) and hence

---

[2] SEC. 7481. DATE WHEN TAX COURT DECISION BECOMES FINAL.

The decision of the Tax Court shall become final—

\* \* \* \* \* \* \*

(2) DECISION AFFIRMED OR PETITION FOR REVIEW DISMISSED.—

\* \* \* \* \* \* \*

(B) PETITION FOR CERTIORARI DENIED.—Upon the denial of a petition for certiorari, if the decision of the Tax Court has been affirmed or the petition for review dismissed by the United States Court of Appeals;

after the holding that only $12,000 was actually 1944 income, the excess of this, or $9,028.83, was the amount of gross income to be excluded from 1944 and allocated to 1945. The argument is without merit. The holding as to 1944 was that whatever was received in 1944 as proceeds of the book was ordinary income and that $12,000 was received in that year. Since the petitioners reported receipt of $42,363.57, even though they contended that only half was to be taken into account, the amount excluded was $30,363.57.

*Decision will be entered for the respondent.*