Mary Pauline McKenney JOYCE, Aloysius G. Casey and Gerard A. McDonough, executrix and executors under the Will of M. Pauline Casey, Deceased, Plaintiffs,

v.

The UNITED STATES, Defendant.

Civ. No. 8296.

United States District Court
M. D. Pennsylvania.

Oct. 13, 1964.

164

Lawrence F. Casey, New York City, Jerome P. Casey, Scranton, Pa., Brown, Wood, Fuller, Caldwell & Ivey, New York City, for plaintiffs.

Bernard J. Brown, U. S. Atty., Scranton, Pa., Peter J. Ciano, Dept. of Justice, Tax Division, Washington, D. C., for defendant.

NEALON, District Judge.

The plaintiffs have moved for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.

The material facts, as stipulated by both parties, are as follows:

Andrew J. Casey and Patrick J. Casey were partners in a business consisting mainly of holding real estate for rent. On the death of each partner the trustee of that partner's residuary estate became a partner. In 1946, both partners

having died, the partnership business was being conducted by the trustees of the estates of Andrew J. Casey and Patrick J. Casey. During the year 1946 the taxpayer, M. Pauline Casey,[1] was the sole income beneficiary of the trust created under the Will of Andrew J. Casey. Although the taxpayer herself was not engaged in the trade or business of renting real estate during the year 1946, the partnership was so engaged, and, in that year, the partnership sold a business property located at 520–522 Lackawanna Avenue at a loss in the amount of $39,-340.18. The loss was charged against the capital account of the partnership and was not reported as a loss on the fiduciary return of Andrew J. Casey. On the fiduciary return for 1946 of the Patrick J. Casey Trust a loss of $19,670.09 was reported, but no deduction was taken on that return.

In 1955 the partnership was terminated and the fiduciary return filed by the Andrew J. Casey Trust for that year reported a substituted basis of $805,970.-67 for its interest in the partnership and the properties distributed in liquidating the partnership. In computing the basis of the partnership property the trust did not deduct the loss on the sale in 1946 of the property located at 520–522 Lackawanna Avenue in the amount of $19,670.09 which had been charged against the capital account of the partnership on its books and records. As a part of the audit of the fiduciary returns the books and records of the partnership were inspected. The loss on the sale of the property located at 520–522 Lackawanna Avenue which was charged against the partnership's capital account was deducted in order to compute the substituted basis. The reduction in basis resulted in a lower basis for the property in the hands of the trustee. This lower basis produced a smaller amount of depreciation deduction with the resulting

higher income and tax. The taxpayer filed a timely petition to the Tax Court of the United States for a redetermination of the deficiencies of $4,260.24 for 1955 and $10,131.28 for 1956. In the trial of that case before the Tax Court of the United States, the taxpayer stipulated to the correctness of decreasing the basis of the partnership property by deducting the loss on the sale of the property located at 520–522 Lackawanna Avenue in 1946.

The Tax Court deduced that there was no deficiency in taxes for the year 1955 and a deficiency of $3,250.77 for the year 1956. The decision of the Tax Court became final on October 16, 1962. On May 10, 1963, the taxpayer filed a claim for refund for the year 1946 in the amount of $11,301.60 plus interest from March 15, 1947. No action was taken on the claim for refund and on November 26, 1963, this action was commenced.

The main issue to be decided is whether or not the deceased taxpayer's estate is entitled to a refund on her 1946 income tax under Sections 1311–1315 of the Internal Revenue Code.

Plaintiffs contend that the deceased taxpayer is entitled to a refund on her 1946 income tax return, arguing that the partnership's 1946 distributive net income was overstated in its return by $39,340.18, one-half of which, or $19,-670.09, was included in the deceased taxpayer's return for that year. As a result of this overpayment of taxes the plaintiffs request that a refund be granted under Sections 1311 to 1315 of the Internal Revenue Code.

The defendant, on the other hand, asserts that the plaintiffs are not entitled to a refund because it is not a proper case for relief under Sections 1311–1315 of the Internal Revenue Code and is, therefore, barred by the statute of limitations.

---

1. Miss M. Pauline Casey, the original plaintiff, died on November 27, 1963, the day after the commencement of this action. Mary Pauline McKenney Joyce, Aloysius G. Casey, and Gerard A. Mc-Donough have been named executrix and executors of her estate and pursuant to an order of this Court have been substituted as parties plaintiff in this action.

166

To pass over the limitations hurdle, the plaintiffs rely on the mitigation provisions of the 1954 Code (Sections 1311–1315), which grant extralimitations relief to the taxpayer and the Government if and when they suffer from inconsistent treatment of tax matters by the other side. This purpose was recently stated in Goodling v. United States, 326 F.2d 988 (Ct.Cl.1964):

> "Sections 1311–1315 create a mechanism of relief, designed in general to operate when a formal determination validates an inconsistent position so as to cause an apparent injustice."

The requirements under Section 1311 which must exist before a closed taxable year can be reopened are (a) the "[m]aintenance of an inconsistent position" by the Commissioner[2] in case the amount of the adjustment would be credited or refunded in the same manner as an overpayment, and (b) a "determination" which adopts the position maintained by the Commissioner and is inconsistent with an error, e. g., an erroneous inclusion, exclusion, omission, allowance, disallowance, recognition or nonrecognition, as the case may be, occurring in the determination of the taxpayer's tax liability for a prior taxable year. Moreover, one of the seven types of error enumerated under Section 1312 must also be present.

The defendant contends that Section 1311 does not apply because (a) the Commissioner has not maintained a position of "active inconsistency", and (b) the "determination" is not one described in Section 1312 as required. Finally, defendant argues that this case does not fall under any of the circumstances of adjustment provided for under Section 1312.

As for the first element under Section 1311 concerning the "[m]aintenance of an inconsistent position", it is the contention of the plaintiffs that the $19,670.09 adjustment in 1955 "was initiated by a revenue agent and embodied in a

statutory notice of deficiency which plaintiff challenged in her petition to the Tax Court by appropriate assignment of error which the Commissioner denied in his answer. By thus invoking the prescribed Tax Court procedure for defining issues to be tried, the Commissioner 'maintained' the correctness of his adjustment * * * "

The defendant replies that the Commissioner must maintain a position of "active inconsistence" in order for the Section 1311 to apply and that he has not done so in this case. A similar argument was rejected in Yagoda v. Commissioner of Internal Revenue, 331 F.2d 485 (2d Cir. 1964):

> "Taxpayers argue, however, that the legislative history of the Revenue Act of 1938 indicates that the predecessor of Sections 1311–1314 was intended only to prevent exploitation of the statute of limitations by 'active inconsistency.'"

> \*   \*   \*   \*   \*

> "Taxpayer's argument, however, misconceives the nature of the mitigation of limitation provisions, which are remedial, not punitive. Cory v. Commissioner, 261 F.2d 702, 704 (2d Cir. 1958), cert. denied, 359 U.S. 966, 79 S.Ct. 877, 3 L.Ed.2d 834 (1959); Olin Mathieson Chem. Corp. v. United States, 265 F.2d 293 (7th Cir. 1959). The Senate Finance Committee report cited by taxpayers itself declares that the mitigation provisions are intended 'to take the profit out of inconsistency, whether exhibited by taxpayers or revenue agents, and whether fortuitous or the result of design.' S.Rep. No. 1567, 75th Cong., 3d Sess. 49 (1938), 1939–1 (Part 2) Cum.Bull. 779, 815 (1939) (emphasis added); accord, Albert W. Priest Trust, 6 T.C. 221, 226 (1946). Thus we conclude that the Senate Finance Committee did not use the term 'active inconsistency' in the pejorative sense that taxpayers seek to ascribe to it."

2. Or by the taxpayer, depending upon who is seeking relief.

This same construction of the statute was approved in United States v. Rushlight, 291 F.2d 508, 518 (9th Cir. 1961), stating:

"We approve of the rule enunciated in that case (Priest Trust) that the position adopted by the Commissioner need only be inconsistent with the erroneous treatment of the original transaction by the taxpayer."

Here, the position maintained by the Commissioner in regard to the deceased taxpayer's 1956 return was inconsistent with the error in the deceased taxpayer's 1946 return. Thus, in this case we have the "maintenance of an inconsistent position" by the Commissioner.

Section 1311(a), also, requires that this "inconsistent position" be adopted in a determination involving one of the circumstances described in Section 1312, before any relief can be granted. It is agreed by both parties that there has been a determination in the instant case as defined by Section 1313(a) (1), which provides:

"(a) *Determination.*—For purposes of this part, the term 'determination' means—

"(1) a decision by the Tax Court * * *."

The decision by the Tax Court in M. Pauline Casey, 38 T.C. 357 (1962), fulfilled the requirement of a "determination." However, the dispute arises because the adjustment permitted by the mitigation provisions is confined to the specific group of cases in Section 1312. The defendant maintains that the taxpayer's situation fits none of these cases; the plaintiffs assert that they can rely on Section 1312(7)—"Basis of property after erroneous treatment of a prior transaction." I agree with plaintiff that this section is applicable here. Section 1312(7) provides:

"(7) Basis of property after erroneous treatment of a prior transaction.—

"(A) General rule.—The determination determines the basis of property, and in respect of any transaction on which such basis depends, or in respect of any transaction which was erroneously treated as affecting such basis, there occurred, with respect to a taxpayer described in subparagraph (B) of this paragraph, any of the errors described in subparagraph (C) of this paragraph.

"(B) Taxpayers with respect to whom the erroneous treatment occurred.—The taxpayer with respect to whom the erroneous treatment occurred must be—

"(i) the taxpayer with respect to whom the determination is made.

\* \* \* \* \* \*

"(C) Prior erroneous treatment.—With respect to a taxpayer described in subparagraph (B) of this paragraph—

"(i) there was an erroneous inclusion in, or omission from, gross income,

"(ii) there was an erroneous recognition, or nonrecognition, of gain or loss, or * * *."

The first question to be resolved under Section 1312(7) is whether or not the deceased taxpayer was the taxpayer with respect to whom the determination was made. Plaintiffs contend that the deceased taxpayer was the taxpayer as defined under the Statute and defendant asserts that she was not.

Among the issues decided by the Tax Court was the "determination of the adjusted bases of partners' interest in partnership real property." It was the deceased taxpayer, together with others as trustees, whose petition to the Tax Court resulted in a "determination of the adjusted bases of * * * property." The defendant contends that the determination "relates solely to the trustees, who were the members of the partnership, and not to this taxpayer." Defendant

further states that "It is not sufficient that this taxpayer was a party to the action before the Tax Court. It is the trustees who are the taxpayers within the meaning of Section 1312(7) (B) (i)." This argument is not persuasive since the A. J. Casey Trust, as a currently distributable trust, had no net income which would be subject to tax for the years covered by the Tax Court's decision. Furthermore, the Internal Revenue Code defines "taxpayer" as "any person subject to any internal revenue tax." 26 U.S.C. A. 7701(a) (14). The deceased taxpayer was "the taxpayer with respect to whom the (Tax Court's) determination" was made, 38 T.C. 357, and it was she who was "the taxpayer with respect to whom the erroneous treatment occurred" in 1946, since she, not the A. J. Casey Trust, was affected by the erroneous treatment of such loss. It is my conclusion that the language contained in Section 1312(7) (B) of the Code was intended to afford relief to a person such as this deceased taxpayer, who was a party in the Tax Court's determination and whose tax liability is increased because of the earlier erroneous treatment.

The last condition prescribed in Section 1312(7) (C) for a correct adjustment of a prior return is that in the return for the prior taxable year there have occurred, among other items, an "erroneous * * * non-recognition * * of loss" which affects the amount of basis determined. The defendant argues that "non-recognition" does not mean "non-allowance" as claimed by the plaintiffs. Defendant asserts that "non-recognition is intended to be merely a postponement of the inclusion of a gain or the deduction of a loss until a disposition occurs which does not qualify for non-recognition status. It is not intended to produce forgiveness of tax." Defendant cites no authority for his position, nor was any authority found. In fact, the Congressional history points to the contrary. The legislative history of Section 203(a) of the Revenue Act of 1924 and the following statement of the Finance Committee with respect thereto, S.Rep.

398, 68th Cong., 1st Sess. (C.B. 1939-1 (Part 2) 266, 275), makes this clear:

"It appears best to provide generally that gain or loss is recognized from all exchanges and then except specifically and in definite terms those cases of exchange in which it is not desired to tax the gain or *allow the loss.*" (Emphasis supplied)

That the Tax Law equates non-recognition with non-allowance is implicit in other areas, e. g., Section 312(f) of the 1954 Code, which provides in part:

"* * * For purposes of this subsection, a loss with respect to which a deduction is *disallowed* under section 1091 (relating to wash sales of stock or securities), or the corresponding provision of prior law, shall not be deemed to be recognized." (Emphasis supplied)

The principle still holds, see Income Tax Regulations, § 1.1002-1(a), as follows:

"(a) *General Rule.* The general rule with respect to gain or loss realized upon the sale or exchange of property as determined under section 1001 is that the entire amount of such gain or loss is recognized except in cases where specific provisions of subtitle A of the Internal Revenue Code of 1954 provide otherwise."

In the recent case of Goodling v. United States, supra, the Court of Claims held, under similar facts, that Section 1317(7) (C) applied where the taxpayers erroneously recognized gain in a financial transaction which was later determined by the Internal Revenue Service to be tax free.

■■ Thus, the portion of Section 1312(7) (C) with which we are presently concerned may be read, therefore, as "non-allowance * * * of loss * *" and, so construed, it is beyond dispute that in 1946 there was an erroneous non-recognition of loss to the deceased taxpayer, M. Pauline Casey, the taxpayer whose income would have been reduced by the allowance of such loss.

Defendant's final point is that if the mitigation sections apply and the deceased taxpayer is given the deduction, " * * * she would be receiving a part of the corpus" which, under the A. J. Casey Will, she is not entitled to receive since she is only an income beneficiary. This is difficult to follow since the fact is that she did receive and erroneously paid tax upon corpus rather than income from the Trust. By allowing the deceased taxpayer the relief requested, she would not be receiving a part of the trust corpus, but rather would be receiving the tax monies erroneously paid by not recognizing in her tax return the loss on the sale of the partnership properties in 1946.

It is my conclusion, therefore, that allowance of the present claim is authorized under Sections 1311–1315 of the Internal Revenue Code and is wholly consonant with the remedial objectives sought by Congress in enacting such provisions of the Code. Accordingly, and for the reasons set forth above, plaintiffs' motion for summary judgment will be granted and the parties are directed to prepare an appropriate order.